IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

MARK A. PANOWICZ                          :

                                          :

    v.                                    :    Civil Action No. DKC 11-2417

                                          :

SHARON L. HANCOCK, INDIVIDUALLY
AND IN HER OFFICIAL CAPACITY AS           :
CLERK OF THE CIRCUIT COURT
FOR CHARLES COUNTY                        :

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this civil rights action is a motion to dismiss filed by Defendant Sharon L. Hancock, Clerk of the Circuit Court for Charles County, Maryland. (ECF No. 5). The issues are fully briefed and the court now rules pursuant to Local Rule 105.6, no hearing being deemed necessary. For the reasons that follow, the motion will be granted in part and denied in part.

## I. Background

On December 13, 2004, an indictment was filed in the Circuit Court for Charles County, Maryland, charging Plaintiff Mark A. Panowicz with, *inter alia*, child abuse, child sexual abuse, and third-degree sexual offense. The indictment was later amended to charge second-degree assault, and, on April 20, 2005, Plaintiff entered an *Alford* plea to that count. On June

13, 2005, he received a two-year suspended sentence and four years of probation.

In November 2006, unrelated criminal charges were filed against Plaintiff in the District Court of Maryland for St. Mary's County. At the conclusion of a February 2008 bench trial, Plaintiff was found guilty of second-degree assault. At that time, he was employed by Sprint Nextel Corporation ("Sprint") and "work[ed] with his employer to receive support for Work Release prior to . . . sentencing in St. Mary's District Court." (ECF No. 1 ¶ 35). On May 22, 2008, Plaintiff was sentenced to a five-year term of imprisonment, with all but eighteen months suspended, and three years of probation. The court recommended that he be permitted to participate in a work release program, and Plaintiff began serving his sentence immediately. He was unable to "coordinate details" of work release with his employer, however, and, on May 30, 2008, Sprint terminated his employment, citing "voluntary job abandonment" as the basis. (*Id.* at ¶ 38). Sprint advised Plaintiff's attorney of the termination on or about June 11, 2008. (*Id.*).

A violation of probation proceeding was commenced in the Charles County case shortly after charges were brought in St. Mary's County. On August 22, 2008, the Circuit Court for Charles County found that Plaintiff had violated the terms of his probation and sentenced him to a three-month term of

imprisonment to run consecutively to the sentence in the St. Mary's County case.

At around the same time, Plaintiff learned from correctional officers at the St. Mary's County Detention Center that "the Maryland Judicial Web page ha[d] his June[] 2005 Circuit Court for Charles County Alford Plea for the misdemeanor 2nd Degree Assault falsely . . . listed as a felony 3rd Degree Sex Offense." (*Id.* at ¶ 41). Plaintiff immediately contacted his attorney, who learned from detention center personnel that Plaintiff was required to register as a sex offender "before being allowed to leave the Detention Center on Work Release." (*Id.* at ¶ 42). Because Plaintiff refused to register as a sex offender, he was "prohibited from Work Release." (*Id.*). Plaintiff's counsel contacted the circuit court clerk's office and requested that the website be corrected, but was told it could not be changed without a court order. Counsel petitioned the Circuit Court for Charles County to correct the error, and relief was granted in November 2008.

According to Plaintiff, the damage was already done. He was released from incarceration in February 2009, but was unable to return to work in his chosen field, allegedly because many of his former colleagues believed he was a convicted sex offender based on the false report on the judicial website. Moreover, the resulting damage to his reputation and inability to obtain a

3

favorable job reference hampered his efforts to find employment in other fields.[1]

On December 1, 2009, the Maryland Office of Legislative Audits released a report of an audit it conducted of the Office of the Clerk of the Circuit Court for Charles County for the period from July 1, 2006, to June 30, 2009.[2] The audit found that "[t]he Office did not have formal procedures to ensure that the disposition of court cases was properly entered into the automated court system." (ECF No. 8-5, at 5). It recommended that "an independent documented review be performed of the court case dispositions entered into the [Uniform Court System (UCS)] and the related commitment letters, at least on a test basis." (*Id.*). Attached as an appendix to the audit report was a letter, signed by Sharon L. Hancock, Clerk of the Circuit Court for Charles County, and Chief Judge Robert M. Bell of the Court of Appeals of Maryland, stating that they concurred with the audit recommendation. The letter recites that "[t]he Clerk's

---

[1] On February 9, 2010, Plaintiff filed a voluntary chapter 7 bankruptcy petition in the United States Bankruptcy Court for the District of Maryland. A final decree was issued in the bankruptcy case on February 4, 2012.

[2] A copy of the audit report was attached to Plaintiff's papers opposing Defendant's motion to dismiss. (ECF No. 8-5). The report is "integral to and explicitly relied on in the complaint [ECF No. 1 ¶ 52] and the [Defendant does not] challenge its authenticity." *Phillips v. LCI Intern., Inc.*, 190 F.3d 609, 618 (4th Cir. 1999). Thus, it may be considered in the context of a Rule 12(b)(6) motion.

Office has always confirmed, on an informal basis, that criminal case dispositions were properly entered," but that in response to the audit the "Office procedures have been strengthened to formally review criminal case dispositions" by assigning an "independent employee [who] compares the information on the manual court forms, the related commitment letters, and the information entered in the UCS to ensure that the information was entered properly." (*Id.* at Appendix).

Soon thereafter, Plaintiff commenced an action against Sprint and Ms. Hancock in the United States District Court for the Eastern District of Virginia.  Both defendants moved to dismiss and those motions were granted, albeit without prejudice to Plaintiff's right to file suit against Ms. Hancock in this court.

After his appeal to the United States Court of Appeals for the Fourth Circuit was unsuccessful, *see Panowicz v. Sprint Nextel Corp.*, 437 Fed.Appx. 239 (4th Cir. 2011), Plaintiff commenced the instant action, proceeding *pro se*, against Ms. Hancock in her individual and official capacities.  (ECF No. 1). The complaint sets forth a claim under 42 U.S.C. § 1983 for violations of Plaintiff's federal constitutional rights, further alleging violations of the Maryland Declaration of Rights and Md. Code Ann., Cts. & Jud. Proc. § 2-201.  As relief, Plaintiff seeks an award of compensatory and punitive damages, an

5

"affirmative injunctive direction to send out notice to other people who may have been impacted by the improper policies . . . of the Clerk's Office," and "expungement of the record in the Circuit Court for Charles County for [Plaintiff's] 2005 proceedings." (*Id*. at 22).

On November 3, 2011, Defendant moved to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 5).  Plaintiff filed opposition papers on November 21, 2011 (ECF No. 8), and Defendant did not file a reply.

## II. Standard of Review

The purpose of a motion to dismiss under Rule 12(b)(6) is to test the sufficiency of the complaint. *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006).  A plaintiff's complaint need only satisfy the standard of Rule 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed.R.Civ.P. 8(a)(2).  "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 n. 3 (2007).  That showing must consist of more than "a formulaic recitation of the elements of a cause of action" or "naked assertion[s] devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted).

6

At this stage, the court must consider all well-pleaded allegations in a complaint as true, *Albright v. Oliver*, 510 U.S. 266, 268 (1994), and must construe all factual allegations in the light most favorable to the plaintiff, *see Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999) (citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)). Complaints filed by *pro se* litigants are "to be liberally construed . . . and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotation marks and citation omitted). The court need not, however, accept unsupported legal allegations. *Revene v. Charles Cnty. Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1979). Nor must it agree with legal conclusions couched as factual allegations, *Iqbal*, 556 U.S. at 678, or conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979); *see also Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged, but it has not 'show[n] . . . that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed.R.Civ.P. 8(a)(2)). Thus, "[d]etermining whether a complaint states a plausible claim for relief will . .

. be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

## III. Analysis

### A.    42 U.S.C. § 1983

Plaintiff sues Defendant, both individually and in her official capacity as Clerk of the Circuit Court for Charles County, for violations of his Fourteenth Amendment rights to substantive and procedural due process, "personal security rights in reputation," and the "right to liberty to pursue his chosen profession without improper governmental interference." (ECF No. 1 ¶ 84).  The crux of his argument is that Defendant's erroneous publication of a sex offense conviction on a state judicial website resulted in him being unable to find work in his chosen profession.  The complaint recites that Defendant failed "to correct an on-going custom, process, procedure, and policy" of improperly recording judgments of conviction, for which she was responsible as the "final policy-maker" of the clerk's office, and "failed to properly train employees," which "resulted in [Plaintiff] recklessly . . . being falsely recorded and reported on the Maryland Judicial web page as a convicted felon." (*Id.* at ¶¶ 60, 64).  Thus, the complaint sounds in defamation, asserting theories of municipal and supervisory liability.

Section 1983 provides liability for "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws[.]" 42 U.S.C. § 1983.  To state a claim under § 1983, a plaintiff must allege that (1) the defendant "deprived him of a right secured by the Constitution of the United States" and (2) that "any such deprivation was achieved under color of state law." *Paul v. Davis*, 424 U.S. 693, 696-97 (1976) (footnote omitted).

State law defamation, by itself, does not deprive a plaintiff of "liberty" or "property" "sufficient to invoke the procedural protection of the Due Process Clause." *Paul*, 424 U.S. at 701.  To state a due process claim, a plaintiff must allege, in addition to the defamatory statement, that a right or status was altered or extinguished.  Such claims are commonly referred to as "stigma-plus" claims. *Velez v. Levy*, 401 F.3d 75, 87 (2nd Cir. 2005).

As Judge Messitte explained in *Grimes v. Miller*, 448 F.Supp.2d 664, 673-74 (D.Md. 2006):

> A "stigma-plus" claim requires [the plaintiff] to show: "(1) the utterance of a statement 'sufficiently derogatory to injure his or her reputation, that is capable of being proved false, and that he or she

claims is false,' and (2) a material state-imposed burden or state-imposed alteration of the plaintiff's status or rights." *Sadallah v. City of Utica*, 383 F.3d 34, 38 (2d Cir. 2004) (citations omitted). The Fourth Circuit has held that "[t]he type of communication that gives rise to a protected liberty interest implies 'the existence of serious character defects such as dishonesty or immorality.'" *Ridpath v. Bd. of Governors Marshall Univ.*, 447 F.3d 292, 308 (4th Cir. 2006) (citing *Robertson v. Rogers*, 679 F.2d 1090, 1092 (4th Cir. 1982)). The Fourth Circuit has also, however, "distinguished statements that imply such serious character defects from statements that simply allege 'incompetence,'" the former being actionable under a "stigma-plus" theory, the latter not. *Id*. As examples of the former, the Fourth Circuit has referenced charges of bribery, *see Boston v. Webb*, 783 F.2d 1163, 1165-66 (4th Cir. 1986), official dishonesty, *see Cox v. N. Va. Transp. Comm'n*, 551 F.2d 555, 557-58 (4th Cir. 1973), and fraud, *see McNeill v. Butz*, 480 F.2d 314, 319-20 (4th Cir. 1973).

(Internal footnote omitted).

Here, Plaintiff has sufficiently alleged the utterance of a derogatory statement that is demonstrably false – *i.e.*, the publication on the "Maryland Judicial web page" that his 2005 conviction in the Circuit Court for Charles County was for a third-degree sex offense, rather than a second-degree assault. Moreover, he has alleged that the defamatory statement resulted in harm to his reputation and interfered with his prospects for employment. A number of courts have recognized that misclassification as a sex offender results in a cognizable

stigma-plus claim. *See Vega v. Lantz*, 596 F.3d 77, 81-82 (2nd Cir. 2010); *Coleman v. Dretke*, 409 F.3d 665, 668 (5th Cir. 2005) (per curiam) ("by requiring [an inmate] to attend sex offender therapy, the state labeled him a sex offender – a label which strongly implies that [the plaintiff] has been convicted of a sex offense and which can undoubtedly cause adverse social consequences") (internal marks and citations omitted); *Chambers v. Colorado Dep't of Corr.*, 205 F.3d 1237, 1242 (10th Cir. 2000) (sex offender label is "replete with inchoate stigmatization"); *Kirby v. Siegelman*, 195 F.3d 1285, 1292 (11th Cir. 1999) (per curiam) ("the stigmatizing effect of being classified as a sex offender constitutes a deprivation of liberty under the Due Process Clause."). Thus, Plaintiff has alleged deprivation of a right secured by the Constitution.

Defendant argues that dismissal is nevertheless warranted because she is a state official, and thus not a "person" within the meaning of § 1983 in her official capacity. She further contends that, in her individual capacity, she is entitled to absolute judicial immunity because she conducts "tasks that are integral to the judicial process." (ECF No. 5-1, at 9). Defendant argues, in the alternative, that Plaintiff has failed to state a claim for supervisory liability.

**1.   Official Capacity**

**a.   Monetary Damages**

Defendant contends that she is not liable to Plaintiff for money damages in her official capacity because circuit court clerks are state officials. (ECF No. 5-1, at 13). As support, she observes that these positions are created by the Maryland State Constitution, that Maryland has statutorily defined the duties of circuit court clerks, and that clerks are explicitly designated by statue as "state personnel." In opposing the motion, Plaintiff argues that court clerks are municipal officers subject to liability under § 1983. He argues that a "judgment against the Clerk of the Circuit Court for Charles County would be paid out of the funds collected on behalf of Charles County" (ECF No. 8-1, at 7); that Defendant is "allowed autonomy in how the government entity is managed and [complies] with legal obligations" (*id.* at 8); and that the clerk is locally elected, "funded by local taxes," and "handles local concerns" (*id.* at 9).

In *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989), the Supreme Court of the United States held that a State is not a "person" subject to liability under § 1983 and that a "suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." Thus, a suit against a state official

"is no different from a suit against the State itself." *Will*, 491 U.S. at 71 (citing *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985); *Monell v. Dept. of Social Servs. of City of N.Y.*, 436 U.S. 658, 690 (1978)).   Municipal governments, on the other hand, may be sued for constitutional injuries caused by their officials "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Spell v. McDaniel*, 824 F.2d 1380, 1385 (4th Cir. 1987) (quoting *Monell*, 436 U.S. at 690-91).

In deciding a municipal liability claim under § 1983, the court's first task is to "identify those officials or governmental bodies who speak with final policymaking authority for the local governmental actor concerning the action alleged to have caused the particular constitutional or statutory violation at issue." *McMillian v. Monroe County, Ala.*, 520 U.S. 781, 784-85 (1997).  Here, there is no dispute that Defendant is the "final policy-maker" of the Office of the Clerk of the Circuit Court for Charles County.  (ECF No. 1 ¶ 64).  The parties disagree, however, as to whether Defendant was a state or local official at the time of Plaintiff's injury.  If Defendant was a state official, she cannot be sued in her official capacity as a "person" liable for money damages under § 1983.  If, on the other hand, she was a county or local

official, then the municipality could be held liable and Plaintiff's official capacity monetary damages claim must go forward.

Courts look to several different factors to determine whether an official is "an arm of the State or more like a county or municipality[.]" *Cash v. Granville County Bd. of Educ.*, 242 F.3d 219, 223 (4th Cir. 2001). "The principal factor, upon which courts have virtually always relied, is whether a judgment against the governmental entity would have to be paid from the State's treasury." *Cash*, 242 F.3d at 223; *see also Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 430 (1997); *Hess v. Port Auth. Trans-Hudson Corp.*, 513 U.S. 30, 39 (1994); *Lewis v. Board of Educ. of Talbot County*, 262 F.Supp.2d 608, 612 (2003) ("Generally, if the judgment would be paid from the state treasury, the inquiry is at an end."). Where the judgment would not be paid from the state treasury, or if the answer is uncertain, courts generally consider "(1) the degree of control that the State exercises over the entity or the degree of autonomy from the State that the entity enjoys; (2) the scope of the entity's concerns – whether local or statewide – with which the entity is involved; and (3) the manner in which State law treats the entity." *Lewis*, 262 F.Supp.2d at 612 (quoting *Cash*, 242 F.3d at 224). In conducting this analysis, courts look to state law. *McMillian*, 520 U.S. at 786.

Plaintiff asserts that an adverse judgment against Defendant would be paid from county funds, but cites no legal authority for this proposition, and Defendant has not addressed the issue. Pursuant to Md. Code Ann., State Gov't § 12-404, subject to certain limitations, the Maryland State "Board of Public Works may . . . pay wholly or partly a settlement or judgment against the State or any State personnel[.]" The term "State personnel" is defined by State Gov't § 12-401 as including any "State officer or State employee." Numerous statutory provisions reflect that circuit court clerks fall within that definition. *See* State Gov't § 15-102(*ll*)(6) ("'State official' means . . . a clerk of the circuit court"); State Gov't § 12-101(a)(11) (defining "state personnel" under the Maryland Tort Claims Act as including "an employee of a circuit court"). Indeed, Plaintiff acknowledges in his complaint that, prior to filing suit, he "submitted a claim with the Maryland State Treasurer" (ECF No. 1 ¶ 22), as he was required to do in order to bring a claim against the State or a State officer under the Maryland Tort Claims Act. *See Gray v. Maryland*, 228 F.Supp.2d 628, 640-41 (D.Md. 2002) (citing State Gov't § 12-106(b)(1)). This fact alone strongly supports that a judgment against a county clerk would be paid from state coffers.

15

Even if that were not the case, there can be little doubt that court clerks are state officers under Maryland law. Their office is established by the state constitution, *see* Md. Const., Art. IV § 25 ("There shall be a Clerk of the Circuit Court for each County"), as is their compensation, *id.* at § 10(b) ("The offices of the Clerks shall be funded through the State budget."). The "powers and duties of clerk of court" are delineated by statute, *see* Md. Code Ann., Cts. & Jud. Proc. § 2-201, as are their hours of operation, Md. Code Ann., Cts. & Jud. Proc. § 2-204, and they are supervised by the State Comptroller and the judges of the various circuit courts, *see* 69 Md. Op. Atty. Gen. 57, 1984 WL 247035, at *1. Moreover, as the audit report attached to Plaintiff's opposition papers reflects, county clerk offices are subject to statutorily-mandated audits by the Maryland Office of Legislative Audits. *See* State Gov't § 1220 (requiring an "audit of each unit of the State government" every three years; defining "unit" as including "each clerk of court").

It appears that no Maryland court has directly addressed the question of whether circuit court clerks are state or local officials, but other courts have found factors such as these persuasive. *See Mumford v. Basinski*, 105 F.3d 264, 268-69 (6th Cir. 1997) (officers of state domestic relations court were state employees, reasoning that the court was established by the

16

state constitution and its officers were supervised by state judges); *Bright v. McClure*, 865 F.2d 623, 626 (4th Cir. 1989) (action against North Carolina county clerk of court was "clearly one against the state of North Carolina"); *Badillo v. Thorpe*, 158 Fed.Appx. 208, 212 (11th Cir. Dec. 1, 2005 (court administrators were "part of the state courts system, which . . . is a state agency"); *Fayemi v. Pucinski*, 155 F.Supp.2d 944, 948 (N.D.Ill. 2001) ("The Clerk of Court is a state employee and, consequently, is a state agent for purposes of Eleventh Amendment immunity").   While it is true, as Plaintiff observes, that county clerks are locally elected, have limited jurisdiction, and derive funding from local sources, courts have consistently found that factors such as these are not dispositive.   *See Rucker v. Harford County*, 316 Md. 275, 285-87 (1989); *Rossignol v. Voorhaar*, 321 F.Supp.2d 642, 651 (D.Md. 2004) ("The same factors pointing toward the sheriff's status as a county official (compensation from [county] treasury, limitations on some aspects of their jurisdiction, election by county voters, etc.) may be present, but have already been all but discounted by the Supreme Court.") (citing *McMillian*, 520 U.S. at 791-92).

Considering that a judgment against Defendant would likely be paid from the state treasury, that her position is created by the state constitution, and that her duties are defined by

statute, Defendant is a state official under Maryland law. Accordingly, she is not a "person" subject to suit under § 1983, and Plaintiff's official capacity claim for monetary damages cannot be sustained.

**b.   Injunctive Relief**

In addition to monetary damages, Plaintiff seeks injunctive relief in the form of a notice to be sent "to other people who may have been impacted by the improper policies" of the clerk's office and an "order expung[ing] [] the record in the Circuit Court for Charles County for [his] 2005 proceedings." (ECF No. 1, at 22). Defendant contends, without substantive analysis, that Plaintiff is not entitled to such relief because he "does not represent 'other people who may have been impacted by the improper policies'" and his criminal record now accurately reflects a second-degree assault conviction.

While "individuals sued in their official capacity as state agents cannot be held liable for . . . retrospective injunctive relief[,] [t]hey may . . . be sued for prospective injunctive relief to end violations of federal law and remedy the situation for the future." *Lewis*, 262 F.Supp.2d at 612 (citing *Edelman v. Jordan*, 415 U.S. 651 (1974); *Milliken v. Bradley*, 433 U.S. 267 (1977); *Ex parte Young*, 209 U.S. 123 (1908)). The majority of courts have held that an expungement of any kind constitutes retrospective relief impermissible under § 1983. *See Ellis v.*

*Dyson*, 421 U.S. 426, 441 (1975) (Powell, J., dissenting) ("I think it clear beyond question that petitioners' action for retrospective relief [*i.e.*, expungement of a criminal record] is barred"); *Kruse v. State of Hawai'i*, 857 F.Supp. 741, 753 n. 16 (D.Hawai'i 1994); *Constantine v. Rectors and Visitors of George Mason University*, 411 F.3d 474, 496 (4th Cir. 2005) (finding that expungement of a failing grade from an academic record was retrospective relief); *McGee v. Feneis*, No. 07-CV-4868 (PJS/FLN), 2009 WL 2928245, at *5 (D.Minn. Sept. 8, 2009) ("An expungement is retroactive injunctive relief because it does not prevent a continuing or ongoing violation of federal law – it simply changes the effect of an event that happened in the past."). Thus, Plaintiff's request for expungement of his 2005 conviction in Charles County is likely barred.

Even if it were not, however, this court has no authority to grant such relief. Expungement of a state criminal record "must be sought through the state court system." *Dennis v. National R.R. Passenger Corp.*, 34 Fed.Appx. 950 (4th Cir. 2002); *see also Wallace v. Poulos*, No. DKC 08-0251, 2012 WL 993380, at *7 (D.Md. Mar. 22, 2012); *Azez v. Keller*, No. 06-0106, 2010 WL 1380024, at *4 (S.D.W.Va. Apr. 1, 2010) (finding that a state circuit court was "the proper forum" for seeking expungement of a criminal record where the state set forth a statutory procedure). Like the state statute at issue in *Azeez*, Maryland

has a statutory scheme addressing the procedure for expungement of a state criminal record. *See* Md. Code Ann., Crim. Pro. §§ 10-101 *et seq*. Thus, Plaintiff must address any request for expungement of his criminal record to the appropriate state court, if at all.

Insofar as Plaintiff seeks affirmative injunctive relief requiring Defendant to send notice to other persons who may be affected by the alleged "improper policies" she put in place, he has failed to state a claim. Affirmative injunctive relief is available "[o]nly where there are lingering effects or a not insubstantial risk of recurring violations." *Spencer v. Gen. Elec. Co.*, 703 F.Supp. 466, 469 (E.D.Va. 1989). For a court to order such relief, it must "conclude that a cognizable danger of recurrent violation exists." *Spencer*, 703 F.Supp. at 469 (quoting *United States v. Hunter*, 459 F.2d 205, 210 (4th Cir. 1972)). Plaintiff has set forth no facts suggesting that a cognizable danger of recurrent violations exists. Indeed, the complaint recites that Defendant's office is regularly audited by the State (ECF No. 1 ¶ 52), and the appendix attached to the audit report reflects that a formal review policy now supplements the Office's former informal review process to ensure accurate reporting of criminal dispositions (ECF No. 8-5). Accordingly, Plaintiff is not entitled to the injunctive relief he seeks.

### 2.   Individual Capacity

Plaintiff sues Defendant in her individual capacity under a theory of supervisory liability.    Individual capacity suits "seek to impose personal liability upon a government official for actions [she] takes under color of state law." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985).  Supervisory liability applies where a supervisor has knowledge "that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury" and responds with deliberate indifference; thus, there must be an "affirmative causal link" between the supervisor's inaction and the resulting constitutional harm. *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994); *see also Jones v. Wellham*, 104 F.3d 620, 628 (4th Cir. 1997) ("While a municipal liability claim based upon a particular official's attributed conduct and a supervisory liability claim against that official based upon the same conduct are not perfectly congruent, each requires proof both of the official's deliberate indifference and of a close affirmative link between his conduct and a resulting constitutional violation by a subordinate."  (internal citation omitted).

In his complaint, Plaintiff alleges that Defendant is individually liable insofar as she "failed to have a proper process in place [and/or] failed to train employees to ensure

that [j]udicial decrees are properly recorded and verified and reported in criminal cases." (ECF No. 1 ¶ 61). Defendant argues that Plaintiff's individual capacity claim under § 1983 must be dismissed because, as Clerk of the Circuit Court for Charles County, she is entitled to absolute judicial immunity for "tasks that are integral to the judicial process." (ECF No. 5-1, at 9). She alternatively contends that Plaintiff has failed to state a claim for supervisory liability.

   **a.  Absolute Immunity**

   The Supreme Court has held that individuals performing certain functions have absolute immunity from liability under § 1983. For example, judges and prosecutors enjoy absolute immunity from individual capacity suits when exercising discretionary judgment. *See Imbler v. Pachtman*, 424 U.S. 409, 423 (1976). "[T]he presumption," however, "is that qualified rather than absolute immunity is sufficient to protect government officials in the exercise of their duties." *Burns v. Reed*, 500 U.S. 478, 486-87 (1991).[3]  Indeed, the Court has "refused to extend [absolute immunity] any further than its justification would warrant," including to administrative or investigative conduct not closely associated with the judicial phase of criminal proceedings. *Burns*, 500 U.S. at 487; *see also*

_____

   [3]  Here, Defendant does not assert qualified immunity as a basis for dismissal.

*Forrester v. White*, 484 U.S. 219, 229 (1988) (holding that a judge is not entitled to absolute immunity when "supervising court employees and overseeing the efficient operation of a court").

The primary focus in applying the absolute immunity doctrine is on "functional categories, not on the status of the defendant." *Briscoe v. LaHue*, 460 U.S. 325, 342 (1983). When absolute judicial immunity is extended to officials other than judges, "it is because their judgments are functional[ly] comparab[le] to those of judges – that is, because they, too, exercise a discretionary judgment as part of their function." *Antoine v. Byers & Anderson, Inc.*, 508 U.S. 429, 436 (1993). Thus, to be entitled to absolute immunity, the official must exercise discretion in "resolving disputes between parties, or of authoritatively adjudicating private rights." *Id*. at 435–36. The focus on whether an individual exercises discretion comports with policy justifications for extending absolute immunity, including the "concern that harassment by unfounded litigation would cause a deflection of [an official's] energies from his public duties, and the possibility that he would shade his decisions instead of exercising the independence of judgment required by his public trust." *Imbler*, 424 U.S. at 423; *see also Ostrzenski v. Seigel*, 177 F.3d 245, 250 (4th Cir. 1999) (finding that peer reviewers for the Maryland Board of

Physicians Quality Assurance are entitled to absolute immunity because they "exercise their professional discretion in determining whether one of their fellow physicians has deviated from the standard of professional care . . . [and] [i]f [they] were to face the prospect of civil liability for damages, the exercise of that discretion might be distorted."); *Traversa v. Ford*, 718 F.Supp.2d 639, 646 (D.Md. 2010) (finding the Maryland Commission on Human Relations was entitled to quasi-judicial immunity when determining which complaints to pursue, reasoning that it "has discretion to accept or reject complaints, to designate the complaint for systemic processing, to negotiate settlements, and to hold hearings.").

A number of courts have found that court personnel performing non-discretionary functions are not entitled to absolute immunity. In *Antoine*, 508 U.S. at 435-36, the Supreme Court held that court reporters were not entitled to judicial immunity because they were "afforded no discretion in the carrying out of [their duties]." Similarly, in *McCray v. State of Maryland*, 456 F.2d 1, 4 (4th Cir. 1972), the Fourth Circuit held that a court clerk was not immune, reasoning that "there is no basis for sheltering the clerk from liability under section 1983 for failure to perform a required ministerial act such as properly filing papers." The court further stated, "where an official is not called upon to exercise judicial or quasi-

judicial discretion, courts have properly refused to extend to [her] the protection of absolute judicial immunity, regardless of any apparent relationship of his role to the judicial system." *McCray*, 456 F.2d at 3;[4] *see also Harbeck v. Smith*, 814 F.Supp.2d 608, 630 (E.D.Va. 2011) (court clerk who failed to notify a correctional facility that charges against a criminal defendant had been dismissed was not entitled to quasi-judicial immunity because the "alleged course of inaction was [not] a choice within [the clerk's] discretion [n]or was [it] taken pursuant to the state court's direction.").

The conduct at issue in the instant case – *i.e.*, proper recordation of a judgment of conviction – is not a discretionary function. *See Waller v. Maryland Nat. Bank*, 95 Md.App. 197, 208 ("The entry of the judgment on the docket is a ministerial function and the clerk possesses no discretion in this matter."), *vacated on other grounds*, 332 Md. 375 (1993); *Director of Finance of Baltimore City v. Harris*, 90 Md.App. 506, 513 (1992) ("Except as otherwise expressly provided by law, . . . the clerk has no discretion"); *see also* Md. Rule 2-601

---

[4] The court later held, in *Pink v. Lester*, 52 F.3d 73, 77 (4th Cir. 1995), that "[t]o the extent that *McCray* authorizes a cause of action for merely negligent conduct that impacts access to the courts, it is inconsistent with the Supreme Court's subsequent decision in *Daniels* [*v. Williams*, 474 U.S. 327, 330 (1986) ("the Due Process Clause is not implicated by a negligent act of an official causing unintended loss of or injury to life, liberty, or property.")]."

(defining procedure for entry of judgment).  Rather, it is a ministerial task for which the Supreme Court has found officials are not entitled to absolute immunity.  *See Burns*, 500 U.S. at 486-87.  Accordingly, Defendant cannot claim absolute immunity from Plaintiff's individual capacity suit.

> **b.  Failure to State a Claim**

Supervisory liability "arises from the obligation of a supervisory [] officer to insure that h[er] subordinates act within the law."  *Randall v. Prince George's County*, 302 F.3d 188, 203 (4th Cir. 2002).  "Although such a supervisor may not prevent all illegal acts by h[er] subordinates, [s]he is obligated, when on notice of a subordinate's tendency to act outside the law, to take steps to prevent such activity."  *Randall*, 302 F.3d at 203.  Where a supervisor is "deliberately indifferent to that responsibility, [s]he then bears some culpability for illegal conduct by h[er] subordinates, and [s]he may be held vicariously liable for their illegal acts."  *Id.*

Defendant argues that Plaintiff has failed to plead facts sufficient to show her liability as a supervisor.  Specifically, she asserts, Plaintiff has not alleged that the "improper recording of a court judgment on a publicly-available docket was done with [her] knowledge, had ever been done in the past[,] . . . . or pose[d] a pervasive and unreasonable risk of constitutional injury to the plaintiff."  (ECF No. 5-1 at 16).  She further

contends that Plaintiff "fails to identify a single fact suggesting that [her] response to her knowledge showed deliberate indifference . . . or that there was a causal link between her alleged inaction" and entry of judgment. (*Id.*).

In *Shaw*, 13 F.3d at 799, the Fourth Circuit "set forth three elements necessary to establish supervisory liability under § 1983":

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices"; and (3) that there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

The first two elements generally require a showing of more than a single incident of harm. In *Shaw*, for example, a police officer shot and killed a suspect during an arrest, and the victim's family sued the officer's supervisor in his individual capacity. The Fourth Circuit held that the police supervisor demonstrated deliberate indifference to the safety of citizens where the supervisor "had knowledge of at least three incidents in which [the officer] used excessive force which posed an unreasonable risk of harm to arrestees," yet the supervisor

failed to reprimand the officer. *Id.* at 800. Similarly, in *Baynard v. Malone,* 268 F.3d 228 (4th Cir. 2001), a student who was molested by a teacher over a period of several years sued the school principal under a theory of supervisory liability. The court held that the principal was liable, reasoning that she took no action to protect the student, despite knowing that the teacher was "very physical" with them and that students accompanied him on camping trips where no other adults were present. *Id.* at 235. *See also Slakan v. Porter,* 737 F.2d 368, 375 (4th Cir. 1984) (finding prison supervisors were liable for failure to implement policies restricting the use of force by guards where the supervisors knew of at least seven prior instances of the conduct that caused injury to the plaintiff).

Where a complaint recites only a single instance of harm, courts have generally found a failure to state a claim for supervisory liability. In *Thompson v. Dorsey,* No. ELH-10-1364, 2011 WL 2610704, at *5 (D.Md. June 30, 2011), for example, a citizen who was allegedly molested by a police officer during a traffic stop sued, *inter alia*, the officer's supervisor for failing to implement training policies that would have prevented the sexual assault. Observing that the complaint cited only a single allegation of misconduct, Judge Hollander dismissed the complaint without prejudice, reasoning that "[a] supervisor cannot 'reasonably be expected to guard against the deliberate

criminal acts of his properly trained employees when he has no basis upon which to anticipate the misconduct.'" *Thompson*, 2011 WL 2610704, at *5 (quoting *Slakan*, 737 F.2d at 373); *see also Randall,* 302 F.3d at 207 ("courts have appropriately required proof of multiple instances of misconduct before permitting supervisory liability to attach.").

While it may be true that Plaintiff will ultimately be required to show prior instances of misconduct to prevail on his supervisory liability claim, the focus at the dismissal stage is on plausibility. Considering the well-pleaded allegations of the complaint in the light most favorable to Plaintiff, as the court must on a motion to dismiss, Plaintiff has set forth a plausible claim that he suffered a cognizable injury as a result of Defendant's failure to implement formal safeguards against the erroneous publication of judgments of conviction on a judicial website. The question is a close one, and Plaintiff's ultimate burden in proving deliberate indifference is heavy, but the audit report "nudge[s] [his] claim[] across the line from conceivable to plausible[.]" *Twombly*, 550 U.S. at 570. The appendix to the audit report indicates that Defendant implemented informal procedures to ensure that judgments were accurately recorded, but the State's recommendation that formal policies be adopted at least suggests that these informal procedures were in some respect insufficient. To the extent

that Defendant may have known of a propensity for such errors and failed to respond, whether by implementing a formal policy or providing training to her subordinates, Plaintiff has set forth a sufficient § 1983 claim against Defendant in her individual capacity, albeit by a very thin margin.

Ultimately, the "determining issue on supervisory liability is whether defendant proximately caused a violation of the plaintiff's rights by doing something or failing to do something he should have done," and "this issue is ordinarily one of fact, not law." *Shaw*, 13 F.3d at 798-99 (citing *Avery v. County of Burke*, 660 F.2d 111, 114 (4th Cir. 1981); *Spell v. McDaniel*, 591 F.Supp. 1090, 1109-10 (M.D.N.C. 1984)).  Plaintiff is entitled to discovery to attempt to make the requisite showing. Accordingly, Defendant's motion to dismiss Plaintiff's individual capacity claim under § 1983 will be denied.

### B.   The State Law Claims

In addition to the federal § 1983 claim, Plaintiff raises supplemental state law claims alleging violations of Articles 19, 23, 24, and 40 of the Maryland Declaration of Rights and a statutory violation under Md. Code Ann., Cts. & Jud. Proc. § 2-201.  Defendant has not analyzed the alleged violations of the Maryland Declaration of Rights separately from the § 1983 claims, but argues that § 2-201 of the Courts and Judicial Proceedings Article does not provide a cause of action.

Insofar as Plaintiff's § 1983 individual capacity claim against Defendant survives dismissal, so, too, do his claims under Articles 19, 23, and 24, which are *in pari materia* with the Due Process Clause of the Fourteenth Amendment. *See Doe v. Department of Public Safety and Correctional Services*, 185 Md.App. 625, 636 (2009) ("Article 24 . . . is *in pari materia* with the Due Process Clause of the Fourteenth Amendment"); *Hof v. State*, 97 Md.App. 242, 250 (1993) ("Numerous cases over the decades have held Article 23 to be *in pari materia* with the due process clause of the Fourteenth Amendment"); *Attorney General v. Johnson*, 282 Md. 274, 298 (1978) ("The 'law of the land' in Article 19 is the same due process of law required by the [F]ourteenth [A]mendment"), *overruled on other grounds*, *Newell v. Richards*, 323 Md. 717, 734 (1991).

Article 40, which provides that "every citizen of the State ought to be allowed to speak, write and publish his sentiments on all subjects, being responsible for the abuse of that privilege," is construed *in pari materia* with the First Amendment. *Howard County Citizens for Open Government v. Howard County Bd. of Elections*, 201 Md.App. 605, 623 n. 19 (2011) (citing *State v. Brookins*, 380 Md. 345, 350 n. 2 (2004); *The Pack Shack, Inc. v. Howard County*, 377 Md. 55, 64 (2003)). Plaintiff cites a right under Article 40 "to not be defamed by the government or government agents" (ECF No. 1 ¶ 84), but it is

not at all clear that such a right exists or how Plaintiff's right to freedom of speech could be implicated based on the facts of the case. Accordingly, Plaintiff's claim under Article 40 will be dismissed.

Plaintiff's claim under § 2-201 of the Courts and Judicial Proceedings Article also cannot be sustained. That section, entitled "Powers and duties of clerk of court," provides, in relevant part, that "[t]he clerk of court shall . . . [m]ake proper legible entries of all proceedings of the court and keep them in well-bound books or other permanent form." Md. Code Ann., Cts. & Jud. Proc. § 2-201(a)(2). On its face, the statute does not expressly provide a cause of action.

Defendant argues, based on federal case law, that this statute does not give rise to an implied right of action. In his opposition papers, Plaintiff does not contend otherwise; rather, he merely asserts that "[in order] to claim a special relationship and a duty of care owed to a Plaintiff by a Defendant, a Plaintiff must plead reference to at least a statute or rule." (ECF No. 8-1, at 14). Thus, it appears that he cited § 2-201 in the complaint to establish a duty owed by Defendant and did not intend to raise a freestanding cause of action. Insofar as the complaint appears to raise a claim for violation of § 2-201, that claim is subject to dismissal.

## IV.  Conclusion

For the foregoing reason, Defendant's motion to dismiss will be granted in part and denied in part.  A separate order will follow.


```
_____/s/_____
```
DEBORAH K. CHASANOW
United States District Judge