IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Southern Division)

MARK A. PANOWICZ,                          ◆

        Plaintiff,                    ◆

  v.                                       ◆    Civil Action No.:

SHARON L. HANCOCK,                         ◆    8:11-cv-02417-DKC
  ET AL.
                       ◆

        Defendants.                   ◆

                       ◆



◆   ◆   ◆   ◆   ◆   ◆   ◆   ◆   ◆   ◆   ◆   ◆   ◆   ◆

## REPLY TO DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR

## RECONSIDERATION AND MOTION TO REOPEN SOVEREIGN IMMUNITY ISSUE

Plaintiff Mark A. Panowicz replies in opposition to Defendant Sharon L. Hancock's Opposition to Plaintiff's Motion for Reconsideration and Motion to Reopen Sovereign Immunity Issue.

### INTRODUCTION AND BACKGROUND

Defendant, by way of their Opposition to Plaintiff's Motion for Reconsideration and Motion to Reopen Sovereign Immunity Issue, places great weight on *Slakan v. Porter*, 737 F.2d 368 (4th Cir. 1984); it is this sole reliance on *Slakan* by both the Court and the Defendants that forms the basis for Plaintiff's assertion that the Court did not understand that Plaintiff specifically proved Defendant Sharon L. Hancock personally participated in the violation of Plaintiff's Constitutional rights and personally participated in the violation Plaintiff's state rights. Personal participation is, typically, the determining factor in a section 1983 claim, and Defendant Sharon L. Hancock electronically signed three false

commitment records, on three different occasions, that all contained the false conviction and represent her personal participation.

Defendants attempt to justify the Court's previous holding concerning the official capacity claim against Defendants by stating 'the court must still consider whether a judgment against the official would be paid from the State treasury." (Defendant's Opposition, Aug. 12, 2015, p. 6). Defendants fail to acknowledge the fact that this issue was never wholly resolved because, if the State of Maryland engineered the Clerk of Circuit Court's office, after *Monell* was decided, so that the fees and incomes the office generates as revenue are now called State revenue, then, by the State's *ipse dixit* argument, the State has abrogated federal law (i.e., abrogated section 1983) and effectively, made State law supreme to federal law. Maryland's Declaration of Rights does not allow the people of Maryland, nor the judges of Maryland, to abrogate United States' laws and the federal Constitution. (Md. Constitution, Declaration of Rights, Art. 2).

Defendants attempt to label Plaintiff's justifications for reconsideration as simply "a rehashing of his prior arguments." (Defendant's Opposition, Aug. 12, 2015, p. 7). Making a conclusion as to the intention and effect of what Plaintiff is attempting to do, remains in the discretion of the Court, and this issue is better discussed below.

Defendant's last argument is again heavily reliant on *Slakan* and fails to acknowledge the personal participation of Ms. Hancock. Although the Court did briefly address ratification in the July 9, 2015 Memorandum Opinion, the Court only addressed a need for actual knowledge, and never analyzed the fact that actual knowledge can be dismissed (or, effectively found to have been met) as an element of ratification if it can be shown the principle took on the risk of lack of knowledge. (Restatement (Third) of Agency § 4.06, comment d). If a government official/principal can avoid section 1983 liability, under

2

a ratification theory as proposed here, by avoiding knowledge of a transaction and allowing someone

else to sign their name for him or her (or, an electronic signature to be used in their absence), then there

is an argument for over-ruling *Monell*, and allowing *respondeat superior* liability in section 1983 claims

because any government agency (and, policy-making official) can engineer their office to avoid liability

by avoiding knowledge in the first place by authorizing use of their official signature without having

actually been physically involved.

## ARGUMENT

## I.   DEFENDANTS MISCONSTRUE THE BASIS FOR THIS COURT'S HOLDING FROM THE JULY 12, 2015 MEMORANDUM OPINION

Defendants here rely solely upon Plaintiff's difficult proposition of showing supervisory liability

on the part of Defendants, under the principles and guidance found in *Slakan v. Porter*, 737 F.2d 368

(4th Cir. 1984). Plaintiff is not rearguing the Court's reasoning on that point as Plaintiff can appeal that

decision and the Court's holding on that issue is not a viable basis for a reconsideration motion,

regardless of the controlling authority found in *Watkins v. State*, 14 Md. 412, 422-423 (1859) which can

be found as applicable to other aspects of this case, such as the personal participation of Ms. Hancock.

Rather, Plaintiff does not believe that the Court fully addressed the personal participation by Ms.

Hancock, evidenced by her electronic signature. Under MD Code, Commercial Law, § 21-106 (a), a

signature may not be denied legal effect solely because it is an electronic signature. The legal effect

here, of Ms. Hancock's electronic signature, is to provide evidence of the personal participation of Ms.

Hancock and the ratification by Ms. Hancock, of her agent's previous acts. "In order for an individual to

be liable under § 1983, it must be [affirmatively shown that the official acted personally in the

deprivation of the plaintiff's rights]." *Wright v. Collins*, 766 F.2d 841, 850 (4th Cir. 1985). Allowing the

3

use of an electronic signature to be attached to a mittimus (or, a commitment order), is evidence of a decision by Ms. Hancock to allow the risk of a lack of knowledge on her part, to what is being electronically signed on her behalf. Ms. Hancock allows her electronic signatures on commitment orders, even though she knew (or, at least, constructively knew) that her office custom for verifying that judgments and commitment orders were valid and correct, did not include a formal "second check" to guard against errors, mistakes, negligence, intentional errors, or malice, on the part of the clerk performing the task. Ms. Hancock admitted that she knew that the office always informally verified commitment orders and other judgments and orders that are entered into the UCS, which does not meet the expected "strictness which it is the duty of the courts to observe in the administration of the criminal law." *Watkins v. State*, 14 Md. 412 (1859).

While *Watkins* holds court personnel to strict accountability, in the instant case, there was more than one single instance of not verifying the correct order was entered into the docket/UCS (e.g., at a minimum, the presence of a written plea agreement; the motion by the State to amend charge three- from the April, 2005 hearing; and the judgment from the court in June, 2005; and, the proper info being sent to the FBI shortly after October, 2005; the notice from Parole and Probation concerning the violation of probation related to the second degree assault conviction; and three false commitment orders electronically signed by Ms. Hancock- notwithstanding, the actual Aug. 2008 violation of probation hearing that was held in the Circuit Court for Charles County, Md). In fact, Plaintiff has uncovered new evidence that reflects that circuit court clerks in Maryland spent, on average, in 2004, twenty minutes on the task of recording each docket entry in criminal cases and fifteen minutes per entry for post-judgment activities. (Attachment 1, "An analysis of current staffing in the circuit court clerks' offices in Maryland," p. 86, Faye Gaskin, 2005; found at: http://www.ncsc.org/~/media/Files/PDF/

4

Education%20and%20Careers/CEDP%20Papers/2005/GaskinFayeCEDPFinal.ashx). Twenty minutes is arguably enough time to add someone else to check for errors and a failure to do so is evidence of gross negligence and reckless disregard, especially under the holding from *Watkins*.

Additionally, the Court based the holding in the July 9, 2015 Memorandum Opinion and Order on the fact that the Court held Defendants had simply made an error, a clerical error. There are two controlling authorities that conflict with that position: first, in *Watkins*,

> great care must be observed to state the proceedings correctly, and not, under pretense of amplifying the docket entries, to alter the substance and legal effect of the verdict rendered by the jury or the judgment pronounced by the court. To allow this, would be to deprive the citizen of the safeguards thrown around his life or liberty by the Constitution and the law, and to subject him to the consequences of the ignorance or mistake of the clerk.

*Watkins v. State*, 14 Md. 412 (1859). Maryland courts do not allow clerk of court errors to adversely affect the Constitutional rights of citizens (not even three-fifth's of a citizen, as in 1859) when clerk of court "errors" adversely change the substance and legal effect of criminal judgments pronounced by a court, as was done in the instant case by recording a felony sex offense conviction instead of a misdemeanor second degree assault conviction. If a clerk of court may not change the substance and legal effect of a judgment under the guise of "amplifying" docket entries, then there is no other legal basis for allowing mistakes, errors, negligent acts, grossly negligent acts, reckless disregard for people's rights acts, intentional acts, or malicious acts to excuse away a clerk of court changing the substance and legal effect of a properly rendered criminal judgment. Again, in the instant case, the official Defendants had several chances to correct the false conviction and Ms. Hancock personally ratified the previous acts, not once, but three times (in addition to the support for the faulty custom of the office). The second controlling authority, which best summarizes what Plaintiff was trying to argue for regarding the

5

difference between *Paul v. Davis* and *Wisconsin v. Constantineu*, is found in the Fourth Circuit Court of Appeals, "constitutional harm "is not the defamation" itself; rather, it is "the denial of a hearing at which [the affected person] has an opportunity to refute the public charge [citations omitted]." *Sciolino v. City of Newport News, Va.*, 480 F.3d 642, 649 (4th Cir. 2007). Furthermore, "[f]undamental to due process is an opportunity to be heard—"an opportunity which must be granted at a meaningful time." [citation omitted] An opportunity to clear your name after it has been ruined by dissemination of false, stigmatizing charges is not "meaningful." *Sciolino*, 480 F.3d, at 653.

A clerk of court error in a criminal judgment that alters the substance and legal effect of the judgment rendered by the court, resulting in – minimally- defamation, *per se*, and ratified by the elected Clerk of Circuit Court (here, Ms. Hancock), is more than a simple clerical error; under Maryland law and the law of the Fourth Circuit Court of Appeals, the effect of the numerous faults of the Defendants here is a violation of Plaintiff's Constitutional rights, along with a violation of supplementary state rights violations.

## II.   DEFENDANTS DO NOT ADDRESS THE LACK OF EVIDENCE ON THEIR PART CONCERNING THEIR BURDEN OF PROOF REGARDING SOVEREIGN IMMUNITY

The sovereign immunity question can be addressed at this time, or can, likely be remanded on appeal, for a lack of evidence on the part of Defendants. At no time did the Defendants address the engineering of the funds of the office of the Clerk of the Circuit Court, Charles County to label them as state revenue (after *Monell* was decided). The Defendants did not address the function of the Clerk of the Circuit Court, Charles County in recording, reporting and publishing criminal dockets and criminal records and whether this is a local function or state function. The Court and the Defendants did not address the Fourth Circuit Court Appeals holding that Clerks of the Circuit Courts in Maryland are local

6

officials for certain functions. see *In re NVR, LP*, 189 F.3d 442 (4th Cir. 1999) and *In re NVR, L.P.*, 206

B.R. 831, 848 (Bankr. E.D. Va. 1997). These matters need to be addressed by this Court, due to the

change in circuit law.

## III.    DEFENDANTS ATTEMPT TO MINIMIZE PLAINTIFF'S BELIEF THAT THE COURT MISINTERPRETED EVIDENCE

Defendants attempt to minimize Plaintiff's valid concerns about the Court misinterpreting

evidence submitted in this case.

Clearly, the Court, in the July 9, 2015 Memorandum Opinion and Order, did not acknowledge

the full procedural history of this instant case, which does toll the statute of limitations for the

supplementary state law violations. The fact that the Court dismissed the state defamation claim based

on a running of the statute of limitations is clearly in error, as explained in Plaintiff's Memorandum in

Support of Motion for Reconsideration and Motion to Reopen Sovereign Immunity Issue (pp. 8-9). Two

other factors are relevant for this issue, first- whether or not Defendants acted with gross negligence is a

matter of fact for a fact-finder to decide (including the constructive fraud aspect); this issue is not a

question of law. *Higgenbotham v. Public Service Commission of Maryland*, 412 Md. 112 (2009).

Secondly, the claim by Plaintiff concerning the violation of Article Forty of the Maryland Declaration of

Rights is important because of any possible immunity Defendants may claim and Maryland does not

recognize immunity defenses for constitutional torts.

Defendants make an argument in support of the Court's holding concerning the ability of the

Plaintiff to amend the Complaint to add other causes of actions; here again, Plaintiff is not trying to

rehash the argument with the Court, rather, Plaintiff was concerned the Court did not understand that

Plaintiff has personal knowledge of what the plea agreement was intended to do and it is clear that

7

Defendants did not strictly follow the terms of the plea agreement because the Defendants effectively published a sex offense conviction (a false conviction) on the Internet which was specifically against what was argued and decided by the circuit court in Charles County in April-June, 2005.

Defendants again minimize the relevance of the F.B.I. RAP sheet as only that the information shows what the "Criminal History Record" is as of January 5, 2012. What the Court and the Defendants fail to realize is that the F.B.I. RAP – as of January 5, 2012, still does not reflect what Plaintiff's record in the Circuit Court for Charles County reflects, i.e., the disposition of count three was not amended until November, 2008- which could not justify an October, 2005 date as the "final disposition date" on the F.B.I. RAP nor could it justify a sentence date of October, 2008 that reflects an incorrect begin date of July 1, 2009. (Compare attachments 2 and 3). Furthermore, the Presentence Investigation Report ("PSI") submitted in the 2008 St. Mary's County District Court has the false conviction listed, and utilized the proper assault second degree conviction when calculating the suggested guidance for a sentence- the calculation showed 0-3 months and not the five years suspended sentence ultimately rendered by the district court. The PSI cites to several places where the investigator searched to find Plaintiff's criminal record, including the Circuit Court for Charles County, and is in support of Plaintiff's claim that the Circuit Court for Charles County record was wrong, while the other databases were correct, because the PSI relies heavily on the second degree assault conviction when calculating the recommended sentence and begs the question of how did the investigator know which record was correct? (Attachment 4).

Concerning Ms. Hancock's deposition testimony, the "An analysis of current staffing in the circuit court clerks' offices in Maryland" contains the impeaching comment by Ms. Hancock that she "[a]ssist wherever necessary." (Attachment 5). Ms. Hancock's affidavit (dated July 11, 2014), at number

8

3, claims that she did not supervise people in charge of recording dispositions in criminal cases; however, based on the impeaching statement found in attachment five, it is possible that Ms. Hancock did not reveal the full extent of her duties and only revealed minimal information.

Concerning the 2009 Audit report, the meaning of the report is indicative that Ms. Hancock knew there was an informal procedure for verifying docket entries in UCS and the resulting commitment records, and still implemented a process where her electronic signature would be used on commitment records. In other words, Ms. Hancock accepted the possibility that a commitment record might be wrong, even though her signature was being affixed to the official record; effectively, Ms. Hancock accepted the risk of lack of knowledge for ratifying her agents' previous actions.

## IV.   PLAINTIFF WAS SURPISED AT THE CHANGE IN THE COURT'S POSITION

Defendants again place emphasis on the supervisory liability theory of *Slakan*, and fail to recognize that Ms. Hancock is responsible for her electronic signature. In *Hill v. United States ex. rel. Wampler*, 298 U.S. 460 (1936), the U.S. Supreme Court found that a clerk of court (in Maryland federal district court, who was following a practice in the Maryland state courts) violated a person's due process rights by substantively changing the commitment order from what the judge had rendered in the presence of the criminal defendant. There was no mention of supervisory liability; rather, it was the personal act of the clerk of the court that violated the criminal defendant's due process rights.  When combining the holdings of *Watkins*, *Sciolino*, and *Wright* (all discussed previously in this document, in addition to the totality of the circumstances- i.e., no documented training; no documented policies; several instances of failing to correct the record based on orders from the court and a written plea bargain; strict liability under Maryland case law as per *Watkins*; a 2002 task force report specifically warning of the damages in the instant case; an inference that Ms. Hancock purposefully ignored relevant

case law – statutory duties and constitutional duties; ratified her agents acts; the F.B.I. Rap sheet and the PSI all contained the proper information- with the PSI also reflecting the false conviction; and the fact that Ms. Hancock may not have revealed all of her duties as indicated in the impeaching comment, are minimally, conclusive evidence under a totality of the circumstances of liability on Defendant's part and indicative of Ms. Hancock attempting to skirt liability by trying to distance herself from her duties and responsibilities) with the holding of *Wampler*, it is clearly evident that Ms. Hancock can be personally liable for violating Plaintiff's rights (based on her own actions) and all of the Defendants can be held liable for their contribution and responsibility under federal and state law.

One last item should be noted here. Because Plaintiff believed that the Court already held that the false conviction in this case would constitute a violation of Plaintiff's rights, Plaintiff specifically informed the Court that damages would not be submitted as part of Plaintiff's Motion for Summary Judgment; to this point, and because the Court believes that Sprint Nextel only reports that Plaintiff voluntarily abandoned his job (which is arguably defamation as well), Plaintiff now submits a copy of Sprint Nextel's report to the investigator who completed the 2012 OPM background investigation. (Attachment 6). This attachment is contrary to what Sprint Nextel originally told Plaintiff (i.e., that Sprint Nextel considered Plaintiff to have voluntarily abandoned his job – even though Sprint Nextel was responsible for Plaintiff not being able to report to work after Sprint Nextel informed Plaintiff they would support work release) and now shows that Sprint Nextel considers Plaintiff to have been terminated for job abandonment and that Plaintiff was also guilty of 'gross misconduct." Plaintiff has redacted his name from the document- Defendants have a copy of the un-redacted form.

## CONCLUSION

10

Plaintiff has attempted to clarify the information and arguments that Plaintiff has previously presented, in order for the Court to make an informed decision concerning Summary Judgment, instead of allowing the Court to rely on possible misunderstandings of Plaintiff's submissions in this case.

For all of the above justifications and the justifications previously submitted within Plaintiff's Memorandum in Support of Motion for Reconsideration and Motion to Reopen Sovereign Immunity Issue, Plaintiff respectfully moves the Court to RECONSIDER the July 9, 2015 Memorandum Opinion and associated Order, and DENY Defendant's Motion for Summary Judgment and GRANT Plaintiff's Motion for Summary Judgment; additionally, Plaintiff moves the Court to REOPEN the sovereign immunity question for a full development of the record and a full analysis of all of the relevant factors.

Respectfully submitted,

Mark A. Panowicz
Plaintiff *Pro Se*
10195 Griffith Lane
White Plains, Maryland 20695
301-536-4876
mpanowicz59@gmail.com

11

## CERTIFICATE OF SERVICE

I hereby certify that on August 31, 2015, that I will serve the foregoing via First Class mail to:


Michele J. McDonald, Esq.
Assistant Attorney General
Office of the Attorney General of Maryland
200 St. Paul Pl, 20th Floor
Baltimore, MD 21202
Telephone: (410) 576-6576
Facsimile: (410) 576-6393
mmcdonald@oag.state.md.us
*Counsel for Defendant Sharon L. Hancock*


Mark A. Panowicz
Plaintiff *Pro Se*
10195 Griffith Lane
White Plains, MD 20695
Telephone: (301) 536-4876
mpanowicz59@gmail.com